# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JEVON JACKSON,

        Plaintiff,

        v.                                                    Case No. 05-C-711

WILLIAM POLLARD and
MATTHEW J. FRANK,

        Defendants.

## ORDER

Plaintiff Jevon Jackson, a Wisconsin state prisoner, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983. By order of September 22, 2005, the court determined that the plaintiff stated First Amendment claims when he alleged that defendants' denied him internet materials generated from his personal web page and rejected mail from companies that accept unused stamps as payment. On October 27, 2005, the plaintiff filed a motion for a preliminary injunction relating to these claims. Thereafter, the defendants filed a motion for summary judgment and the plaintiff has filed a cross-motion for summary judgment.[1] These motions are ready for resolution and will be addressed herein.

The defendants' motion for summary judgment complies with Civil Local Rule 56.1 (E.D. Wis.). Specifically, the defendant's motion includes a short and plain statement that any factual assertion in their affidavits or other admissible

---

[1]By order of December 19, 2005, the court granted the defendants' motion for an extension of time to respond to plaintiff's motion for a preliminary injunction and permitted defendants to join their response to the motion for injunctive relief with their summary judgment filings. (Order, Dec.19, 2005.)

documentary evidence will be accepted by the court as being true unless the plaintiff submits his own affidavit(s) or other admissible documentary evidence contradicting the factual assertions. The defendants also included the text of Federal Rule of Civil Procedure 56(e) and (f) and Civil Local Rules 56.1, 56.2 and 7.1 along with their motion.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial—(1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law—is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of

the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a summary judgment motion is made and supported as provided in [Rule 56(c),] an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). "However, we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted).

The fact that both parties have moved for summary judgment, and thus both parties simultaneously are arguing that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower the court to enter judgment as it sees fit. *See* 10A Charles Alan Wright et al. § 2720 at 327-28 (3d ed. 1998). The court may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. *See*

*Mitchell v. McCarty*, 239 F.2d 721, 723 (7th Cir. 1957). Cross motions for summary judgment do not convert a dispute into a question of law if material factual questions are involved and additional evidence may be adduced at trial which would be helpful in the disposition of the case. *See M. Snower & Co. v. United States*, 140 F.2d 367 (7th Cir. 1944). The proper procedure is to assess the merits of each summary judgment motion independently. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. *See* 10A Charles Alan Wright et al. § 2720 at 335.

## II. UNDISPUTED FACTS

The relevant undisputed facts are taken from the defendants' "Proposed Findings of Fact" (hereinafter referred to as "DPFF"), the plaintiff's "Response to Defendants' Proposed Findings of Fact" (hereinafter referred to as "PPFF"), the defendants' reply to plaintiff's response (hereinafter referred to as "Reply") and the affidavits referred to therein to the extent that they are undisputed and comply with Rule 56(e), Federal Rules of Civil Procedure. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996). Averments from the parties' affidavits which are conclusory, not made with personal knowledge, or otherwise not admissible in evidence have not been included in the relevant undisputed facts. *See* Fed. R. Civ. P. 56(e).

- 4 -
Case 2:05-cv-00711-JPS   Filed 06/23/06   Page 4 of 19   Document 52

At all times relevant to this action, the plaintiff was incarcerated at the Green Bay Correctional Institution ("GBCI"). (DPFF ¶ 1.) The plaintiff has filed the instant lawsuit against defendant William Pollard, the warden of GBCI, and defendant Matthew Frank, the secretary of the Wisconsin Department of Corrections ("DOC"). (DPFF at ¶¶ 2 and 3.)

## A. Facts Relating to Plaintiff's Claim that Defendants Did Not Deliver Mail from a Company that Accepts Unused Stamps as Payment

On March 25, 2005, a catalog from a company identified as Mamarazzi, Inc. that was addressed to the plaintiff was received at GBCI. (DPFF ¶¶ 4 and 5.) A Notice of Non-Delivery of Mail/Publications (Form DOC 243) was sent to plaintiff, on March 25, 2005, which stated that the piece of mail would not be delivered because the "[i]tem contains contraband" and the "[i]tem concerns an activity, which if completed would violate the laws of Wisconsin, the United States or the Administrative Rules of the Department of Corrections." (DPFF ¶¶ 5 and 6.) This catalog came from a company that accepts United States postage stamps as payment. (DPFF ¶ 7.)

On March 29, 2005, the plaintiff filed Offender Complaint No. GBCI-2005-9997 with the inmate complaint examiner (ICE) in which he argued that the non-delivery of the Mamarazzi, Inc. catalog was improper because "[t]here is no DOC or Administrative Rule that states that we can't have mail from a company that accepts stamps as payment." (DPFF ¶ 8.) The ICE recommended dismissal of the complaint for the following reasons:

> Mamarazzi, Inc. accepts unused, new first class stamps as payment. An inmate may not receive an item that concerns an activity which, if completed would violate the rules of the DOC. The unauthorized mail piece was appropriately rejected for the reason stated on the notice of non-delivery sent to the inmate. It is my recommendation that this complaint be dismissed.

(DPFF ¶ 8.)

The warden's designee, Michael Baenen, followed the ICE's recommendation and dismissed the complaint on March 29, 2005. (DPFF ¶ 9.) The plaintiff did not file an appeal of the warden's decision to the Corrections Complaint Examiner (CCE) with respect to Offender Complaint No. GBCI-2005-9997.

Subsequently, the plaintiff filed Offender Complaint No. GBCI-2005-17611 on June 6, 2005, in which he complained that he was allowed to receive Prison Legal News, another magazine that accepts stamps as payment. (PPFF ¶¶ 1-7; Reply ¶ 10.) Offender Complaint No. GBCI-2005-17611 was rejected by the ICE on the ground that the "complaint has been addressed through the inmate's prior use of the ICRS (DOC 310.11(5)(g), Wis. Adm. Code) (GBCI-2005-17102). (PPFF ¶ 4; Reply ¶ 10.) The plaintiff appealed the ICE's decision to reject the complaint and the rejection was affirmed by warden Pollard. (PPFF ¶ 5; Reply ¶ 10.) Pursuant to Wis. Admin. Code § DOC 310.11(6), the reviewing authority's decision to reject a complaint is final. (PPFF ¶ 7; Reply ¶ 10.)

The GBCI Property/Clothing Handbook instructs the inmates on how to order permitted inmate personal property that is not sold in the institution canteen. (DPFF ¶ 11.) According to Wis. Admin. Code § DOC 309.52(1)(d), inmates who

wish to purchase items that are not sold in the canteen must follow institution rules when purchasing such items. (DPFF ¶ 12.) There are no provisions in inmate handbooks or institution policy that allow stamps to be used to purchase anything. (DPFF ¶ 13.)

While DOC inmates are prohibited from using stamps to purchase anything, there is nothing in the DOC policies, procedures or administrative code that prevents inmates from receiving publications that advertise stamps as a viable payment option. (DPFF ¶ 14.) GBCI's denial of Jackson's incoming mail from Mamarazzi, Inc., on March 25, 2005, was based upon a misinterpretation of the DOC policies and procedures. For almost a year now, GBCI no longer prohibits incoming mail solely on the basis that it advertises stamps as a viable payment option for its products. (DPFF ¶ 16.)

**B. Facts Relating to Plaintiff's Claim that Defendants Did Not Deliver Mail Generated from His Personal Web Page**

On May 26, 2005, a letter from Paula Duyf of Dublin, Ireland addressed to the plaintiff, was received at GBCI. (DPFF ¶¶ 17 and 18.) The letter was from a pen-pal service called "Inmate Connections." (DPFF ¶ 20.) A Notice of Non-Delivery of Mail/Publication was sent to plaintiff on May 26, 2005. (DPFF ¶ 18.) The reasons for the non-delivery of mail was listed on Form DOC-243 as "[i]tem contains contraband" and "[i]tem concerns an activity, which if completed would violate the laws of Wisconsin, the United States or the Administrative Rules of the Department of Corrections." (DPFF ¶ 19.) In addition, the Notice of Non-Delivery contained the following explanation: "You received a letter from a pay

for pen-pal service and is not allowed per the DOC." (Affidavit of Kathleen Bierck ["Bierck Aff."], Ex. 1002 at 3.) The envelope was not opened by any GBCI mailroom personnel. (DPFF ¶ 20.)

Plaintiff filed Offender Complaint GBCI-2005-17102 challenging the non-delivery of the letter. (DPFF ¶ 21.) During the investigation into the complaint, the ICE opened the envelope and determined that the correspondence was in response to the plaintiff's profile on the web. (DPFF ¶¶ 21 and 22.) The ICE made the following determination:

> the correspondence is in response to inmate Jackson's profile on the web. Internet information received through the mail will be allowed only if it meets the requirements for possession as listed in DOC 309 IMP #1 and is in compliance with Administrative Code 309.04(4). Internet material or e-mail from inmate personal web pages are not permitted. The verbiage information for the non delivery notice does not accurately reflect the non delivery box that was checked on the form. I find that to be harmless error, the item concerns an activity, which if completed would violate the laws of Wisconsin, the United States or the Administrative Rules of the Department of Corrections. It is for these reasons I recommend this complaint be dismissed.

(Bierke Aff., Ex. 1002 at 5.)

It is undisputed that inmates may receive internet material through the mail only if it meets the requirements for possession as set forth in DOC 309 IMP 1 and IMP 4 and is in compliance with Wis. Admin. Code § DOC 309.04(4). (DPFF ¶¶ 23-25.) There is no current or former DOC rule or regulation that prohibits inmates from advertising on a website or having a personal web page. (PPFF ¶ 11; Reply ¶ 27.) However, DOC 309 IMP 1, which governs inmate personal property, provides that inmates are not allowed to obtain and possess ""[i]nternet materials

- 8 -
Case 2:05-cv-00711-JPS   Filed 06/23/06   Page 8 of 19   Document 52

or e-mail from inmate personal web pages . . . ." (Affidavit of Daniel A. Westfield ["Westfield Aff."], Ex. 1005.) In addition, DOC 309 IMP 4, which governs inmate mail, prohibits inmates from receiving, through the mail, "[i]nternet material, or email from inmate personal web pages . . . ." (PPFF ¶ 11; Reply ¶ 27; Westfield Aff., Ex. 1004 at 2.) Part of DOC's mission is protection of the public, and DOC's ban on the receipt of internet materials from an inmate's web pages prevents inmates from being in a position where they can solicit gifts or money from an unknowing member of the public. (DPFF ¶ 28.) The ban on the receipt of internet material and e-mails from inmate personal web pages also furthers DOC's interest in efficient management and preserving scarce resources. (DPFF ¶ 29.) The processing of mail is very resource intensive. (DPFF ¶ 30.) Institution staff is required to inspect and/or open all mail. (DPFF ¶ 30.) According to the security chief of the DOC, allowing inmates to advertise on websites could create a very large increase in their workload, which could delay the delivery of mail to staff and inmates and would impact the staff's ability to thoroughly search incoming mail for contraband. (DPFF ¶ 30; Westfield Aff. ¶ 8.) In addition, he testified that the DOC has continued to lose staff and resources as a result of budget cuts. (DPFF ¶ 30; Westfield Aff. ¶ 8.)

Inmates do have alternative means of accessing pen-pals. (DPFF ¶ 31.) An inmate could write someone that is advertising for pen-pals and there are pen-pal organizations that solicit inmates to write. (DPFF ¶ 31.) Furthermore,

inmates have the ability to communicate with others through the mail, telephone calls, and visitors. (DPFF ¶ 31.)

### III. ANALYSIS

### A. First Amendment Claim Concerning Mail from a Company that Accepts Unused Stamps as Payment

Plaintiff claims that his First Amendment rights were violated when the mailroom staff refused to deliver his mail from Mamarazzi, Inc. because it was from a company that accepted unused stamps as payment. The defendants argue that they are entitled to summary judgment as to this claim on three alternative grounds: (1) plaintiff failed to exhaust available administrative remedies as to such claim; (2) an isolated occurrence of non-delivery of mail does not give rise to a First Amendment violation; and (3) plaintiff's request for injunctive relief is moot.

The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999)). Failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). The duty to exhaust one's administrative remedies applies "regardless of the relief offered

through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001) (footnote omitted); *see also Perez*, 182 F.3d at 538. Further, there is no futility exception to the exhaustion requirement. *See Booth*, 532 U.S. at 741 n.6; *Perez*, 182 F.3d at 537.

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code specifically provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05.

In order to use the ICRS, an inmate must file a complaint with the inmate complaint examiner (ICE) within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," typically, the warden or his or her designee. *See* Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within 10 days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within 10 days after the date of the decision, a complainant who is dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner (CCE). Wis. Admin. Code § DOC

- 11 -
Case 2:05-cv-00711-JPS   Filed 06/23/06   Page 11 of 19   Document 52

310.13(1). The CCE reviews the appeal and makes a recommendation to the secretary of the Department of Corrections. Wis. Admin. Code § DOC 310.13(6). The secretary may accept, adopt, or reject the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2). The failure on the part of an inmate to properly complete each step in the ICRS grievance procedure means that the inmate has failed to exhaust available administrative remedies. *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

In the instant case, the plaintiff filed Offender Complaint No. GBCI-2005-9997 in which he challenged the March 25, 2005, non-delivery of the Mamarazzi, Inc. catalog. It is undisputed that this offender complaint was dismissed by the reviewing authority—the warden's designee—on March 29, 2005. (DPFF ¶ 9.) It is also undisputed that the plaintiff did not appeal that dismissal to the CCE. (DPFF ¶ 10.) Thus, plaintiff did not exhaust his administrative remedies with respect to his claim concerning the Mamarazzi, Inc. catalog because he never sought or obtained a decision on Offender Complaint No. GBCI-2005-9997 from the Secretary of the DOC.

While plaintiff does not contest the fact that he failed to exhaust his administrative remedies with respect to his claim concerning the non-delivery of the Mamarazzi, Inc. catalog, he argues that he was "prohibited from filing an appeal to the CCE." In support for his contention, he points to the fact that a different Offender Complaint—No. GBCI-2005-17611—in which he challenged the "arbitrary

policy" of allowing inmates to receive "Prison Legal News," a publication that accepts unused stamps as payment, but prohibits inmates from receiving other publications which do "the same exact thing" was rejected by the ICE on June 7, 2005. (Complaint, Docket #1 Exs. 11 & 12.) He argues that under the administrative rules he was not allowed to appeal the rejection of his complaint to the CCE but was only allowed to appeal to the appropriate reviewing authority (in this case, warden Pollard) whose decision to affirm the rejection of the complaint was final under Wis. Admin. Code § DOC 310.11(6).

The problem with the plaintiff's argument is that it does not change the fact that he failed to exhaust his administrative remedies with respect to Offender Complaint GBCI-2005-9997—the only offender complaint which specifically challenged the non-delivery of the Mamarazzi, Inc. catalog. In the instant action, plaintiff's First Amendment claim is premised on his contention that he was not allowed to receive the Mamarazzi, Inc. catalog—the only publication that was denied to the plaintiff under the alleged GBCI policy of refusing to deliver mail from companies that accept unused stamps as payment. Thus, plaintiff was required to exhaust his administrative remedies as to that claim. Because he failed to do so, plaintiff's claim that his First Amendment rights were violated when the mailroom staff refused to deliver his mail from Mamarazzi, Inc. will be dismissed, without prejudice, pursuant to 42 U.S.C. § 1997e(a).[2] *See Ford v. Johnson*, 362 F.3d 395,

---

[2]The plaintiff concedes that prospective relief in the form of an injunction is no longer warranted with respect to this claim in view of the fact that GBCI no longer prohibits incoming mail solely on the basis that it advertises stamps as a viable payment option. (Plaintiff's Brief in Support of Motion for Summary Judgment and Response to Defendants' Motion for Summary Judgment, Docket #45 at 11.)

401 (7th Cir. 2004) ("*all* dismissals under § 1997e(a) should be without prejudice.") (emphasis in original).

## B. First Amendment Claim Concerning DOC's Ban on Internet Material from a Personal Web Page

Plaintiff alleges that he was denied delivery of a print-out of an email letter from Paula Duyf which was generated from his personal web page. The ability of inmates to access materials on the internet is governed by internal management procedures of the Department of Corrections. *See* DOC 309 IMP 1 and IMP 4. Under these procedures, inmates are not permitted to receive internet material or email from inmate personal web pages. *Id.*

In the instant action, the plaintiff alleges that these regulations violate his First Amendment rights. The defendants contend that they are entitled to judgment as a matter of law with respect to this claim because the regulation is reasonably related to legitimate penological interests.

The United States Supreme Court has recognized that inmates retain a limited constitutional right to receive materials that originate outside the prison. *E.g., Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987); *Procunier v. Martinez*, 416 U.S. 396 (1974); *Pell v. Procunier*, 417 U.S. 817 (1974). To be constitutional, the denial of a prisoner's incoming mail must be "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004).

There are four factors that courts must consider when inquiring into the reasonableness of a policy that restricts an inmate's First Amendment rights:

(1) whether the regulation is rationally related to a legitimate and neutral governmental or penological objective; (2) whether alternative means of exercising the right remain open to the inmate; (3) what impact an accommodation of the asserted right will have on guards and other inmates; and (4) whether there are obvious alternatives to the regulation that show that the prison regulation is an exaggerated response to prison concerns. *See Turner*, 482 U.S. at 89-91.

**1. Rationally Related to a Legitimate and Neutral Penological Objective**

According to the affidavits submitted by the defendants, the ban on the receipt of internet material or email generated from an inmate's personal web page was instituted primarily to protect the public. In addition, the ban is said to promote a stable institutional environment and contributes to the management of staff resources. The DOC security chief, Daniel Westfield, stated in his affidavit that inmates confined in correctional institutions continue to manipulate and victimize others, including members of the public, and the use of the internet provides an opportunity for the inmates to solicit gifts or money from unknowing members of the public. (Westfield Aff. ¶ 7.) In addition, there was testimony that allowing inmates to receive internet material or email generated from personal web pages would encourage inmates to advertise on websites and this would create an increase in the workload of the institution staff that are required to inspect the mail. (Westfield Aff. ¶ 8.)

Protection of the public is a legitimate penological objective. *See Yeaman v. Ward*, 2005 WL 2396509 *11 (W.D. Okla. 2005) ("Preventing inmates from

soliciting the public is a legitimate governmental interest, and prohibiting use of the internet is rationally related to this legitimate governmental interest."). The testimony offered by the defendants establishes that there is a rational connection between the regulation prohibiting the receipt of internet material and email generated from an inmate's personal web page and the legitimate interests of maintaining public security. Certainly, regulations that limit the ability of inmates to correspond with members of the general public in an anonymous manner via the internet further the goals of protecting the public from improper solicitation and victimization. *Id.* Moreover, there is nothing in the record that shows that the prison regulation at issue does not operate in a neutral fashion. In other words, the ban on internet material from an inmate's personal web page applies without regard to the content of the internet material. *See Turner*, 482 U.S. at 89-90 (citing *Pell*, 417 U.S. at 828; *Bell v. Wolfish*, 441 U.S. 520, 551 (1979)).

The plaintiff does not deny that protecting the public is a legitimate penological goal or that the regulation is rationally related to that goal. Rather, he argues that "there are already DOC rules in existence that specifically prohibits [sic] and punishes [sic] such behavior." (Pl.'s Br. in Supp. of Mot. for Summ. J. at 5.) In particular, the plaintiff points to Wis. Admin. Code § DOC 309.04(4)(c), which prohibits the delivery of an inmate's incoming or outgoing mail that "solicits gifts from a person other than a family member or a person on the visiting list." Id. at 5. However, the fact that there are other rules in existence which prohibit the inmates from soliciting non–family members does not mean that the DOC cannot put in

place additional policies or procedures (such as the challenged ban in this case) that attempt to ensure that the prohibition set forth in § DOC 309.04(4)(c) is adhered to.

### 2. Alternative Means of Exercising the Asserted Right

The plaintiff contends that the ban on the receipt of internet material from an inmates' personal web page interferes with his right to communicate with willing members of society including pen pals. The record shows that alternative means are available to plaintiff to exercise this right. For example, inmates are allowed to send letters to individuals advertising for pen-pals, pen-pal organizations exist which are specifically geared toward inmates and, in addition to writing letters, inmates have the ability to communicate through the use of the telephone and with visitors. (Westfield Aff. ¶ 9.)

The plaintiff argues that the ban is arbitrary because the available alternatives could produce the same outcome as posting a personal ad on a web page. This argument is unpersuasive. The fact that the challenged ban does not alleviate every concern for the safety of the public does not render the ban arbitrary so long as the ban is rationally related to that concern. *See Turner*, 482 U.S. at 89-90.

### 3. Impact on Others if the Asserted Right is Accommodated

Testimony in the record shows that absent the challenged regulation, the DOC's ability to protect unknowing members of the public against victimization would be hindered. (Westfield, Aff. at ¶ 7.) In addition, any increased volume of

mail that would occur without this regulation would put additional pressure on an already over-burdened mail room staff. (Westfield, Aff. at ¶ 8.)

### 4. Obvious Alternatives to the Regulation

In determining whether there are obvious alternatives to the challenged regulation, the Supreme Court's decision in *Turner* "does not impose a least-restrictive-alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003) (citing *Turner*, 482 U.S. at 90-91). The plaintiff has not suggested any alternatives meeting this high standard for the regulation at issue. Indeed, the only alternative offered by the plaintiff is that the policy should not exist at all. However, this option does not meet the standard set forth in *Turner* because it does not take into consideration any of the penological interests underlying the rule.

Having considered all four factors identified by the Supreme Court in *Turner*, the court finds that the DOC's ban on internet materials generated from inmate personal web pages is reasonably related to legitimate penological interests. As a result, the plaintiff's claim that the DOC's ban on internet materials generated from inmate personal web pages violates his First Amendment rights will be dismissed, with prejudice.

## IV. CONCLUSION

In view of the above, the court will grant the defendants motion for summary judgment. Therefore, the plaintiff's motion for summary judgment and his motion for a preliminary injunction will be denied.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #26) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (Docket #44) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for a preliminary injunction (Docket #14) be and the same is hereby **DENIED**.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this  23rd  day of June, 2006.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge